**John F. KENNEDY, Plaintiff,**

v.

**William E. McCARTY, an individual, and the City of Franklin, Indiana, Defendants.**

**No. IP 90–228–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Oct. 16, 1992.

**1472**

John Emry, Franklin, Ind., for plaintiff.

Roger A. Young, Young & Young, Franklin, Ind., for defendant City of Franklin.

Richard S. Ewing, Allison T. Frazier, Stewart & Irwin, Indianapolis, Ind., for defendant McCarty.

ENTRY DISCUSSING ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEY'S FEES UNDER 42 U.S.C. § 1988

TINDER, District Judge.

On March 7, 1990, Plaintiff Kennedy filed a twenty-seven page Complaint, which, among other things, purportedly sought to enforce a provision of § 1983. Plaintiff filed a twenty-eight page First Amended Jury Demand and Complaint for Damages and Attorney Fees on April 7, 1990. Plaintiff filed a Motion for Partial Summary Judgment on March 30, 1990. On July 27, 1990, Defendants filed a Motion for Summary Judgment of all claims. After an oral argument on the motions for summary judgment, Defendants filed an additional Motion for Partial Summary Judgment; this Motion made clear that Defendants sought judgment on Plaintiff's tort claims because Plaintiff failed to comply with the Indiana Tort Claims Act.

On November 25, 1991, this court entered a Judgment regarding the parties' cross-motions for summary judgment; the court found that Defendants were entitled to a judgment against Plaintiff's due process claim. 778 F.Supp. 1465. An Entry discussing the court's Judgment made plain that the court was skeptical of Plaintiff's motives for and approach to bringing his suit. (Nov. 21, 1991 Entry Cross–Mots. Summ.J. at 1, 3–4, 34–35.) On June 10, 1992, the court granted Defendant's Motion for Partial Summary Judgment regarding Plaintiff's State law claim for wrongful discharge. The lone remaining claim—whether Defendants violated Plaintiff's first amendment right to "free speech"—was tried before a jury on August 4, 1992. At the close of Plaintiff's case, Defendants moved for a directed verdict; the court took that motion under advisement. The jury returned a Verdict in favor of Defendant McCarty and a Verdict in favor of Defendant City of Franklin.

Before the court is Defendants' Motion for Attorney Fees. That Motion seeks over $20,000 in fees and costs Defendants expended to defend Plaintiff's suit.

Title 42, U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Prevailing plaintiffs and prevailing defendants may collect attorney's fees under § 1988. *Unity Ventures v. County of Lake*, 894 F.2d 250, 253 (7th Cir.1990). Although the language of § 1988 does not distinguish between "prevailing" plaintiff's and defendants regarding their ability to recover fees, "prevailing defendants have never been entitled to the same treatment under the statute as prevailing plaintiffs." *Coates v. Bechtel*, 811 F.2d 1045, 1048 (7th Cir.1987) *(citing Vandenplas v. City of Muskego*, 797 F.2d 425, 428–29 (7th Cir. 1986); *Hershinow v. Bonamarte*, 772 F.2d 394, 395 (7th Cir.1985)); *Curry v. A.H. Robins Co.*, 775 F.2d 212, 219 (7th Cir. 1985). A prevailing plaintiff may be deemed a "prevailing party" if the plaintiff succeeds on any significant issue in the litigation which achieves some of the benefits sought in bringing suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). A pre-

vailing defendant may not recover fees under § 1988 unless the district court finds that the plaintiff's action was "vexatious, frivolous, or brought to harass or embarrass the defendant," *id.* at 429 n. 2, 103 S.Ct. at 1937 n. 2, or if the action is "meritless in the sense that it is groundless or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); *Munson v. Milwaukee Bd. of School Directors*, 969 F.2d 266, 269 (7th Cir.1992); *Leffler v. Meer*, 936 F.2d 981, 986 (7th Cir.1991); *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (same standard for fees under Title VII).

■ In the Seventh Circuit, a defendant moving for fees "must demonstrate [1] that the plaintiff brought her action in subjective bad faith, *or* [2] that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith' in order to collect attorney's fees." *Unity Ventures*, 894 F.2d at 253 (*quoting Christiansburg*, 434 U.S. at 421, 98 S.Ct. at 700) (emphasis added).[1] Other circuits have, with some minor linguistic variation, applied a similar standard to determine whether a defendant is a "prevailing party" under § 1988. *See, e.g., Cobb v. Saturn Land Co., Inc.*, 966 F.2d 1334, 1338 (10th Cir.1992); *United States v. State of Miss.*, 921 F.2d 604, 609 (5th Cir.1991) (under § 1988, defendants are entitled to attorney fees *only* when a plaintiff's underlying claim is frivolous, unreasonable, or groundless); *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1560 (11th Cir.1991); *Davis v. City of Charleston, Mo.*, 917 F.2d 1502, 1505 (8th Cir.1990) (defendants must show that the evidence provided a basis for "well supported findings" that the suit is "frivolous, unfounded, and vexatiously pursued"); *Mylett v. Jeane*,

910 F.2d 296, 299 (5th Cir.1990) (fees may be awarded to defendant upon finding that the plaintiff's action was frivolous, unreasonable, "or without factual foundation or that the plaintiff continued to litigate after it clearly became so"); *Benigni v. City of Hemet*, 879 F.2d 473, 480 (9th Cir.1988) (defendant cannot receive fees unless unsuccessful claim was frivolous, vexatious, or brought to harass or embarrass the defendant).

In *Coates v. Bechtel*, 811 F.2d 1045 (7th Cir.1987), the Seventh Circuit discussed the congressional policy behind different standards between plaintiffs and defendants for an award of fees. Congress intended § 1988 to provide an incentive to indigent plaintiffs to bring suit, *id.* at 1049; that purpose would be thwarted if plaintiffs faced the prospect of paying their opponent's fees in every case. *Id.; Hershinow*, 772 F.2d at 395. Thus, instead of taxing losing plaintiffs with costs in every case, § 1988 provides a mechanism for fee shifting only in certain situations. As the Seventh Circuit explained:

> The *Hughes* standard was designed to strike a careful balance between the desire to encourage private litigants with valid claims to bring suit to vindicate civil rights and the need to deter frivolous actions brought primarily to harass the defendant without hope of success. As a result, district courts may grant attorney's fees under § 1988 to prevailing defendants "only in very circumscribed situations." *Hershinow*, 772 F.2d at 395. The Supreme Court has cautioned against post hoc reasoning which equates the plaintiff's failure to prevail with the conclusion that his action must have been unreasonable or without foundation. *Christiansburg*, 434 U.S. at 421–422 [98 S.Ct. at 700–701]. To avoid

---

1. The subjective bad faith test is a federal common law principle of fee shifting, which derives from the Supreme Court's *Christiansburg* decision; it is distinct from and in addition to the § 1988 basis for attorney's fees. A showing of subjective bad faith is not required to allow a defendant to recover fees. *Christiansburg*, 434 U.S. at 421, 98 S.Ct. at 700; *Munson v. Milwaukee Bd.*, 969 F.2d at 269; *Hamer v. Lake County*, 819 F.2d 1362, 1366 (7th Cir.1987) (need not

show subjective or objective bad faith to recover under § 1988); *Coates*, 811 F.2d at 1049 ("An award of attorney's fees to a prevailing defendant is not dependent upon a showing that the plaintiff commenced the action in bad faith"); *Vandenplas*, 797 F.2d at 429. Courts have noted, however, that a finding of subjective bad faith makes the existence of a frivolous suit more clearly apparent. *See, e.g., id.*

discouraging "all but the most airtight claims," the district court must evaluate whether the plaintiff's action was "frivolous, unreasonable, or without foundation" as of the time that the plaintiff filed suit, not with "hindsight logic" after judgment has been entered against him. *Id.* at 422 [98 S.Ct. at 700]. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* On the other hand, when a civil rights suit is lacking in any legal or factual basis, *Tarkowski [v. County of Lake]*, 775 F.2d [173] at 176 [7th Cir.1985], an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation. *See Hamilton v. Daley*, 777 F.2d 1207, 1212 (7th Cir.1985).

*Coates*, 811 F.2d at 1050.[2]

Notwithstanding language creating a prevailing defendant's heavy burden, a recent decision by the Seventh Circuit affirming the district court's award of fees makes clear that a defendant may indeed recover fees. *Munson*, 969 F.2d at 269. Thus, the court will examine the different procedural stages of this matter to determine whether Plaintiff's claims stated at those stages warrant the award of fees Defendants seek under § 1988. This court is mindful of the Seventh Circuit's direction that a district court must "discuss the specific information that formed the basis for the plaintiff's suit, and ... explain why this information did not constitute adequate factual substance for the commencement of a nonfrivolous civil rights case." *Coates*, 811 F.2d at 1051 (*quoting Hermes v. Hein*, 742 F.2d 350, 357 (7th Cir.1984)); *Munson v. Friske*, 754 F.2d 683, 697 (7th Cir.1985).

There are two periods throughout the litigation where a plaintiff's claim may be determined frivolous. The initial question is whether, based upon the information available to the plaintiff *at the time he initiated the lawsuit*, the claim was frivolous, groundless, or unreasonable. *Coates*, 811 F.2d at 1051. The court must focus not on the facts ultimately determined, but on the plaintiff's version of the facts forming the basis for the suit. *Id.* at 1052 & n. 5. Even if the allegations initially reasonably state a claim, a plaintiff may be subject to a fee award if the plaintiff "continues to litigate after it becomes clear that his action lacks factual substance." *Id.* at 1053 (*citing Hughes*, 449 U.S. at 15, 101 S.Ct. at 179). Therefore, if plaintiff's discovery efforts (or lack thereof) fail to provide any factual support for otherwise reasonable allegations, then the court may award fees to the defendant if the plaintiff persists in prosecuting a claim reasonably devoid of factual support. *Coates*, 811 F.2d at 1053; *Hermes*, 742 F.2d at 358. Each stage of the proceedings is discussed individually below.

## I. CLAIMS AND OTHER MATTERS RESOLVED BY PRE–TRIAL MOTIONS

### A. Defendants' Motion to Strike Matter from Plaintiff's Complaint

On November 25, 1991, the court granted Defendants' Motion to Strike certain portions of Plaintiff's Amended Complaint. (Nov. 25, 1991 Entry Cross–Mots. Summ.J. at 34–35.) The court's Order struck paragraph "VI.J." of the Amended Complaint, which constituted ten pages of personal beefs Kennedy had regarding Defendant McCarty's office management style. Concomitant with the court's prior Order, the court now finds that this portion of the Amended Complaint stated material

---

**2.** The Seventh Circuit has stated a non-binding collection of factors a district court may consider to determine whether a particular case provides a proper basis for fees:

> In seeking to determine whether a suit is frivolous, unreasonable, or groundless, courts have focused on several factors. Among those considered are whether the issue is one of first impression requiring judicial resolu-

tion; whether the controversy is sufficiently based upon a real threat of injury to the plaintiff; whether the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines; and whether the record would support such a finding.

*Unity Ventures*, 894 F.2d at 253–54 (*quoting Reichenberger v. Pritchard*, 660 F.2d 280, 288 (7th Cir.1981) (citations omitted in *Unity Ventures* )).

wholly irrelevant to any conceivable claim; Plaintiff inserted the allegations (in both the original and Amended Complaints) seemingly to embarrass and chagrin Defendant McCarty. The allegations (along with specific evidence at trial) provide strong evidence that Plaintiff had a personal grudge against Defendant McCarty and that Plaintiff used this forum to attempt to resolve. At a minimum, Defendants will be awarded costs and attorney fees expended to answer and move to strike these spurious allegations.

### B. Plaintiff's § 1983 Claim that Defendants Deprived Plaintiff of Property Interest in One Dollar Salary and Ninety–Nine Dollar Uniform Allowance without Due Process of Law

Plaintiff claimed that Defendants deprived him of his property and liberty without the process required by the Constitution. That is, Defendants terminated Plaintiff without a hearing. Both parties moved for a summary judgment of this claim; the court found that Plaintiff's reserve officer status did not give him a property or liberty interest to which due process attached. The current question is whether these claims were so meritless that Defendants are entitled to fees expended to prevail against them.

Mere failure of claim to survive a motion to dismiss or motion for summary judgment does not provide basis for finding frivolousness sufficient to support fees. *Coates*, 811 F.2d at 1050–51; *Vandenplas*, 797 F.2d at 432; *Hermes v. Hein*, 742 F.2d at 350, 357 (7th Cir.1984). This legal principle is obvious, because the legal standard for dismissing a claim or entering a summary judgment of a claim is different from the standard required for fees under § 1988. The legal issue here is whether, at

the time Plaintiff made these claims and their attendant allegations, Plaintiff had reason to believe that the allegations stated a colorable claim under the law. The court's Entry on Cross–Motions for Summary Judgment discussed thoroughly the possible legal bases for Plaintiff's due process claim. (Entry Cross–Mots.Summ.J. at 7–29.) That discussion makes clear that each of Plaintiff's arguments and legal theories completely failed to support his due process claim. At the time Plaintiff filed his complaints, it was unreasonable to claim that he had a constitutional right to due process prior to being removed from his position as a reserve officer. Plaintiff's due process claim was so meritless that it can be considered only as a jurisdictional pretext for Plaintiff's main goal: to use this court as a forum to air his personal dispute with Chief McCarty.[3]

### C. Plaintiff's Claim That Defendants Deprived Plaintiff of a Liberty Interest without Due Process of Law

As explained in this court's prior Entry, a Seventh Circuit case squarely on point, *Jungels v. Pierce*, 825 F.2d 1127, 1131 (7th Cir.1987), directly undercuts Plaintiff's claim that Defendants' conduct deprived him of a liberty interest. (See Entry Cross–Mots.Summ.J. at 29–30.) Regardless of the highly questionable merit of the factual basis of Plaintiff's claim, binding precedent vitiated Plaintiff's legal theory. Plaintiff's due process/liberty interest claim was unreasonably prosecuted and frivolous as a matter of law.

### D. Defendants' Second Motion for Summary Judgment Regarding Plaintiff's State Law Tort Claim of Retaliatory Discharge

Plaintiff asserted the State law tort claim that Defendants discharged Plaintiff

---

**3.** Even at this late date, in his Response to Petitions for Attorney Fees, Plaintiff persists in pointing to beliefs and arguments expressly contrary to the law. Plaintiff stated that he "also believed he had a right to more process than the summary firing by the Chief of Police." (Resp. Pets. Atty Fees at 3.) This statement characterizes Plaintiff's approach to this matter: If he "believed" he was entitled to something, then he pursued it regardless of the legal viability of his

claim. As Plaintiff stated further in his Response: "Plaintiff's action was a result of Defendant McCarty's firing of Plaintiff without the authority to do so and for the wrong reason. Whether all individuals in the same situation would have pursued the matter as strongly as Plaintiff did does not bear on the question at all. *He felt he was wronged and sought judicial relief.*" (*Id.* at 4–5 (emphasis added).)

"in retaliation for protected conduct and speech," (Am.Compl. at 27,) even though Plaintiff previously failed to file a notice of tort claim as required by Indiana law. The court's discussion in the Entry on Defendants' Second Motion for Summary Judgment makes plain that Plaintiff had no reasonable basis for contending that he had complied with the specific, mandatory notice provision. None of the cases cited by the Plaintiff lend support to his theory that he "substantially complied" with the notice provision. Based on this wholly lacking predicate, Plaintiff's State law tort claim of retaliatory discharge was frivolous within the meaning of § 1988.

A recent Seventh Circuit case instructed that a defendant who prevails on State law claims connected to a § 1983 claim may recover fees under § 1988. *Munson*, 969 F.2d at 270–71. Given this court's conclusion that Plaintiff's claims were frivolous in their entirety, the court will award of fee expended to defend against the State law claims as well.

## II. CLAIMS RESOLVED AT THE TRIAL BY JURY

Plaintiff's Final Contentions, in pertinent part, indicated that Plaintiff intended to pursue the following claims:[4]

1) Defendants violated Plaintiff's First Amendment right to free speech and to redress his government;

2) Defendant McCarty intentionally inflicted emotional distress on Plaintiff;

3) Defendant McCarty's conduct warrants an award of punitive damages against him.

At trial, Plaintiff submitted evidence and proposed jury instructions regarding the First Amendment and punitive damage claims only; Plaintiff apparently abandoned the State tort law intentional infliction of emotional distress claim.[5] The issue for the court to consider now is whether Plaintiff's § 1983 claim that Defendants'

conduct in terminating Plaintiff deprived Plaintiff of his First Amendment rights was "vexatious, frivolous, or brought to harass or embarrass the defendant" or "meritless in the sense that it is groundless or without foundation." The court is ever mindful that a claim is not "groundless" in hindsight unless it is plain that it was not reasonable for the Plaintiff to believe that he could receive the relief sought.

Plaintiff's theory that the facts support a finding that Defendants violated Plaintiff's First Amendment right plays out like this: (1) Plaintiff he gave a note ("AVO") to Defendant McCarty; (2) the AVO stated as follows:

I request permission to see Mayor Ed Teets. Reference the poor morale problem of the Franklin police Department for which I believe Police Chief William McCarty is Responsible.

(3) Defendant McCarty (acting pursuant to a policy or custom of the Defendant City of Franklin) terminated Plaintiff as a reserve officer because Plaintiff desired to see Mayor Teets regarding employee morale.

The baseline legal issue raised by a First Amendment claim is whether the person against whom a state actor took an adverse action engaged in "protected conduct" prior to that action. *Connick v. Myers*, 461 U.S. 138, 146–47, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983); *Breuer v. Hart*, 909 F.2d 1035, 1037 (7th Cir.1990); *Vukadinovich v. Bartels*, 853 F.2d 1387, 1390 & n. 5 (7th Cir.1988). If the person did not engage in protected conduct, then no First Amendment violation can occur because, by definition, the First Amendment applies to protected conduct only. Whether the conduct Plaintiff claims provided the motivating factor for his termination was "protected conduct" under the First Amendment is strictly a matter of law for the court to determine. *Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7; *Mount Healthy Bd. of Educ. v. Doyle*, 429

---

4. Plaintiff also stated contentions regarding matters that were either no longer viable after the court's first summary judgment ruling or were subsequently removed by the court's second summary judgment ruling.

5. Note, however, that Plaintiff included mental suffering as a component of damages sought under § 1983.

U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Breuer,* 909 F.2d at 1037.

In analyzing whether Plaintiff Kennedy's speech (AVO and connected request) were protected conduct, the court must first determine whether the "context, content and form of [his] statements ... indicate that they were on a matter of public concern." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690; *Breuer,* 909 F.2d at 1037; *Vukadinovich,* 853 F.2d 1387, 1390 (7th Cir.1988); *Hesse v. Board of Educ. of Township High Sch. Dist. No. 211, Cook County, Ill.,* 848 F.2d 748, 752 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989). Although in a sense all events that transpire in a police force are matters of public concern, the *Connick* decision stated, "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark ... would plant the seed of a constitutional case." 461 U.S. at 149, 103 S.Ct. at 1691.

In the *Connick* case, the Supreme Court addressed directly whether speech concerning office morale was protected by the First Amendment. The Court held that if the First Amendment were made available to protect discussion of issues such office morale—even though such topics are naturally of interest to the public insofar as they relate to the efficient performance of a gun-toting, tax-supported agency—then every employment decision could be transformed into a constitutional matter and "government offices could not function." 461 U.S. at 143, 103 S.Ct. at 1688; *see also Breuer,* 909 F.2d at 1038 (discussing this holding in *Connick*); *Sanguigni v. Pittsburgh Bd. of Public Educ.,* 968 F.2d 393, 399 (3rd Cir.1992) (teacher's statements that focused solely on employee morale did not relate to matters of public concern). Plaintiff's allegations and the evidence presented at trial uniformly support the conclusion that Plaintiff's request to see Mayor Teets stemmed from and would revolve around disagreements Plaintiff had with Defendant McCarty's office policies. Even if a discussion about "officer morale" may be of public *interest* in the abstract,

the evidence in this particular case made plain that Plaintiff's "officer morale" complaint largely concerned his personal dissatisfaction and would not be of public concern.

In a theme repeated throughout this entire matter, Plaintiff's request to see Mayor Teets was motivated by Plaintiff's desire to champion his personal view of how the police force ought to be run. After Plaintiff failed to get satisfaction from Defendant McCarty, Plaintiff decided to go to Defendant McCarty's boss. The evidence in this case established without dispute that Plaintiff and Defendant McCarty were at odds with each other over the management of the police force; their private animosity and private disputes, which concerned internal police matters, support the conclusion of law that Plaintiff's AVO did not signal a matter of public concern. *Breuer,* 909 F.2d at 1038; *Barkoo v. Melby,* 901 F.2d 613, 617–18 (7th Cir.1990); *Vukadinovich,* 853 F.2d at 1390–1391. A discussion regarding police department internal rules, police chief party invitations and white-wall tire purchases are not matters of public concern given protection by the First Amendment.

Given that this matter went to the jury to determine the questions of fact presented by the *Pickering* balancing test, Plaintiff may challenge the court's seemingly post hoc determination that his claim was wholly deficient as a matter of law. The Seventh Circuit has stated that "a plaintiff's case that survives a motion for a directed verdict is not a frivolous suit." *Unity Ventures,* 894 F.2d at 255; *LeBeau v. Libbey–Owens–Ford Co.,* 799 F.2d 1152, 1159 (7th Cir.1986), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987); *Soderbeck v. Burnett County,* 752 F.2d 285, 295 (7th Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). Plaintiff's case did not "survive" a motion for directed verdict in the sense used in these cases. Exercising its discretion, the court held Defendants' motion for directed verdict under advisement pending the jury's verdict. Defendants did not present the question of the viability of Plaintiff's First Amendment claim to the court for a dispositive ruling until the Motion for Di-

rected Verdict (Defendants did allude to the "protected conduct" argument in their Trial Brief, however). When Defendants made their Motion, the court was aware that Defendants had a small quantity of evidence to produce. The opportunity to submit the factual questions to the jury gave the court the opportunity to consider the legal question in calm reflection. Besides, it may have been more instructive for Plaintiff to face the music from a six-person jury rather than a one-person judge.[6] Having reviewed the legal issue, the court would have granted Defendants' Motion for Directed Verdict had the jury returned in the Plaintiff's favor.[7] Under these circumstances, failure to grant a directed verdict *at the moment it is presented* does not effect decision whether claims frivolous.

In addition to the unprotected nature of Plaintiff's conduct, the evidence indicated strongly that Plaintiff prosecuted his § 1983 claim to settle a grudge match with Defendant McCarty. Plaintiff loosely alleged a variety of compensable damages; further, Plaintiff requested a damage instruction making compensable "The physical harm to John Kennedy during and after his discharge, including ill health, headaches and other physical pain, disability or discomfort...." (Pl.'s Tendered Instruction No. 6.) However, Plaintiff introduced no evidence that he suffered any physical or emotional injuries; he testified merely that he was "bothered" by the decision to terminated his reserve status. While a person injured in principle only may permissibly seek to vindicate his rights, the evidence in this matter indicates that Plaintiff attempted to vindicate a principle (that he was right) rather than any legal right.

In sum, Plaintiff's allegations and evidence demonstrated plainly that Plaintiff did not engage in protected conduct; therefore, Plaintiff had no viable claim under the First Amendment to the United States Constitution. The legal standards applicable to Plaintiff's claim were firmly established when he filed this action in 1990; similarly, Plaintiff had complete knowledge of the facts upon which his claim rested, because he was the primary actor in the relevant events. Given that an analysis of the facts and law at the time Plaintiff filed his first Complaint would have disclosed that his claim was meritless, groundless and frivolous—and that there was substantial evidence that his AVO and this suit were both motivated by a desire to embarrass Defendant McCarty and vindicate Plaintiff's personal interests—the court finds that Defendants are entitled to costs incurred in prevailing against Plaintiff's § 1983 First Amendment claim.

## CONCLUSION

This court does not award fees to the Defendants *without considerable thought.* Findings regarding the merits and motives of Plaintiff's claims have been aided substantially by the court's observation of the testimony and demeanor of the witnesses during the trial. Plaintiff Kennedy has a decided view of what is right and wrong, a personal characteristic that consistently pitted him against Defendant McCarty in their daily affairs and culminated in this lawsuit. Unfortunately, Plaintiff's position that he was wronged *under the law* was from the beginning unsupported by law or fact and was nothing more than a manifestation of his personal, normative belief that

---

**6.** The court ultimately dismissed the Motion for Directed Verdict as moot after the jury returned its Verdicts in favor of both Defendants.

**7.** The questions presented for the jury's consideration—as framed by the court's instructions—were strictly questions of fact and bore no relation to the issue of law whether Plaintiff's conduct was protected by the First Amendment. The economy of retaining the motion for directed verdict under advisement until after the jury determines the *independent* issues of fact is plain. If the court were to make an incorrect ruling of law prior to the jury verdict, then the matter would require remand for a new trial.

By taking the motion under advisement and allowing the jury to perform their function fully, the court alleviates the need for a retrial regardless whether it rules correctly on the issue whether the conduct is protected. *See Trustee of Ind. U. v. Aetna Casualty & Surety Co.,* 920 F.2d 429, 433 (7th Cir.1990); *Warkentien v. Vondracek,* 633 F.2d 1, 4 (6th Cir.1980); *Ketchum v. Nall,* 425 F.2d 242, 243 (10th Cir. 1970) ("A motion for directed verdict made after all the evidence is in may be taken under advisement and ruled upon after the jury has returned a verdict.").

Defendant McCarty ought not to have run the police force as he did. Because Plaintiff's *legal* claims were literally and practically "groundless" and "frivolous," this is precisely the type of case in which a prevailing defendant may receive costs and fees under § 1988. A person viewing this matter could only wonder with astonishment as Plaintiff used the federal legal process in this manner. Plaintiff may have been a model reserve officer and a duly concerned citizen; however, he plainly had no legal claim to bring before this court and therefore literally should not have made a federal case out of his private dispute. A prevailing defendant in a § 1983 case may recover costs only if the claim should not have been brought in the first place; this is precisely such a case. A separate Order will order Plaintiff Kennedy to pay $18,487.31 ($17,629.50 attorney fees; $857.81 costs) to Defendants William E. McCarty and the City of Franklin for fees and costs incurred regarding the defense provided by Stewart & Irwin and $3,771.00 in fees to Defendant City of Franklin for fees incurred regarding the defense provided by the Franklin City.[8]

ALL OF WHICH IS ENTERED this 16th day of October 1992.

---

**8.** Plaintiff did not contest the amount of fees requested by the Defendants but rather focused solely on his argument that Defendants were not entitled to any fees as a matter of law.