**Joselito VITUG, Plaintiff,**

v.

**MULTISTATE TAX COMMISSION; Dan R. Brucks, as Executive Director; Les Koenig, as Director of Audit; and Member Commissioners, in their capacity as Commissioners, Defendants.**

**No. 93 C 5357.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 27, 1995.

---

See also, 860 F.Supp. 546.

Robert M. Motta, Oak Park, IL, for plaintiff.

Charles W. Newcom, Sherman & Howard, L.L.C., Denver, CO, Judith Y. Gaston, Bates, Meckler, Bulger & Tilson, Chicago, IL, for defendants.

ASPEN, District Judge.

The court approves and adopts the March 24, 1995 Report and Recommendation of Magistrate Judge Martin C. Ashman. Accordingly, defendants' motion for attorney's fees is denied and defendants' motion for bill of costs is allowed. In lieu of filing objections, a motion for reconsideration with supporting brief may be filed within ten days of this order.

## *REPORT AND RECOMMENDATION*

ASHMAN, United States Magistrate Judge.

On January 21, 1994, plaintiff, Joselito Vitug ("Vitug"), filed a two-count first amended complaint seeking damages from defendants, Multistate Tax Commission ("MTC"); Dan K. Brucks, ("Brucks"), as Executive Director; Les Koenig ("Koenig"), as Director of Audit; and Member Commissioners, in their capacity as Commissioners, for alleged violations of 42 U.S.C. § 1981 and alleged violations of Title VII of the Civil Rights Act (42 U.S.C.

§ 2000e, *et seq.*), relating to defendants' employment practices. Judge Aspen on July 27, 1994, granted defendants' motion for summary judgment and issued a written memorandum opinion and order which disposed of each of Vitug's claims.

Defendants' motion for attorney's fees, related expenses, including expert witness fees, pursuant to Local Rule 46, FED.R.CIV.P. 54(d)(2), 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5(k), and defendants' bill of costs filed pursuant to Local Rule 45 are presently before the court. Vitug opposes the motion and the bill of costs on procedural and substantive grounds.

### I. *Procedural Objections*

■ Vitug initially contends that defendants' motion for attorney's fees is untimely under FED.R.CIV.P. 54(d)(2)(B). FED. R.CIV.P. 54(d)(2)(B) directs in relevant part:

> Unless otherwise provided by statute or ordinance of the court, the motion [for attorney's fees] must be filed and served no later than 14 days after entry of judgment ...

Vitug asserts that since summary judgment was entered on July 27, 1994, defendants' motion for attorney's fees would be untimely unless it were filed on or before August 10, 1994. This court notes that defendants have supplied a copy of their motion which bears the Clerk's file stamp of August 10, 1994, which date has not been refuted by Vitug. Vitug's timeliness objection is therefore rejected.

■ Vitug argues that defendants' bill of costs filed on August 26, 1994, is untimely under FED.R.CIV.P. 54(d)(2)(B). Vitug contends that it would be unfair to allow defendants to file a bill of costs after he has responded to their prior motion for attorney's fees because it would require a response to duplicitous and multiple motions. This court disagrees.

First, as noted above, FED.R.CIV.P. 54(d)(2)(B) imposes a period of 14 days from judgment to file a motion for fees "unless otherwise provided by ... order of the court." Local Rule 45 expressly permits the filing of a bill of costs within 30 days of entry of judgment allowing costs. There is no dispute that Local Rule 45 applies to this case and that defendants' bill of costs was filed within 30 days of Judge Aspen's entry of summary judgment for defendants. Vitug has not cited, and this court has not found, any case law to support his argument that the bill of costs must be filed within 14 days of judgment. Therefore, Vitug's timeliness objection to the bill of costs is denied.

The court will now address the substance of Defendants' motion for attorney's fees and defendants' bill of costs.

### II. *Standard for Attorney's Fees*

■ Defendants rely on two statutory provisions as the basis for their motion: 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5(k). 42 U.S.C. § 1988 provides in relevant part:

> In any action or proceeding to enforce a provision of section [ ] 1981 ... the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs.

Similarly, 42 U.S.C. § 2000e–5(k) provides:

> In any action or proceeding under this subchapter [Title VII] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs ...

These statutes clearly allow prevailing defendants as well as prevailing plaintiffs to recover fees; however, the neutral language belies the different standards actually applied to prevailing plaintiffs and prevailing defendants in evaluating motions for attorney's fees. Whereas a prevailing plaintiff may be awarded attorney's fees if he succeeds "on any significant issue in litigation which achieves some benefit [he] sought in bringing the suit," *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), and *Bisciglia v. Kenosha Unified School Dist. No. 1,* 45 F.3d 223 (7th Cir. 1995); a prevailing defendant has the additional burden of demonstrating that the plaintiff either brought his suit in subjective bad faith or that plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v.*

*E.E.O.C.*, 434 U.S. 412, 421, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978); *Unity Ventures v. County of Lake*, 894 F.2d 250, 253 (7th Cir. 1990). The Supreme Court has held that "the fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980).

■ The *Christiansburg* and *Hughes* courts both emphasized that before assessing attorney's fees against a plaintiff, the district court must find that the plaintiff's action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe, supra*, 449 U.S. at 15, 101 S.Ct. at 178–79 (quoting *Christiansburg Garment Co. v. E.E.O.C., supra*, 434 U.S. at 422, 98 S.Ct. at 700). The *Christiansburg* court further noted that any finding by the court that plaintiff brought or continued a claim in bad faith provides an even stronger basis for assessing the defendant's attorney's fees. *Id.*, 434 U.S. at 422, 98 S.Ct. at 701.[1] These guidelines are tempered by the Supreme Court's overreaching caution that district courts should avoid "the understandable temptation to engage in *post hoc* reasoning by concluding that, because the plaintiff did not prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Christiansburg Garment Co. v. E.E.O.C., supra*, 434 U.S. at 422, 98 S.Ct. at 700.

### III. *Background*

Vitug is a male Filipino who was employed as an auditor with MTC, at the Chicago, Illinois office, from April, 1985 until January 1, 1993. In June, 1991, Vitug was one of six applicants interviewing for the position of Field Audit Supervisor with MTC. The interviews were conducted by three MTC employees including Koenig, a white male who was Vitug's manager. Each interviewee was asked the same ten questions and they were

given scores based on independent evaluations of the three interviewers. Each of the interviewers gave Vitug the lowest score of all the candidates. The applicant who scored highest, Harold Jennings, a white male, was offered the position. Koenig and Jennings were both born-again Christians and attended the same church.

When Vitug learned that he had not received the promotion, he filed a written grievance with MTC. Scott Smith, an MTC employee from the Washington, D.C. office, conducted hearings, and recommended in a written memorandum dated August 16, 1991, that the grievance be denied. MTC Executive Director Dan R. Brucks conducted further hearings in September, 1991, and sent a letter to Vitug dated January 29, 1992 which denied Vitug's grievance. On April 10, 1992, Vitug filed a charge with the Illinois Department of Human Rights ("IDHR"); that agency referred the charge to the Equal Employment Opportunity Commission ("EEOC") on May 17, 1992, which subsequently issued a Right to Sue letter. On December 16, Vitug tendered his letter of resignation, effective January 1, 1993; which claimed that the denial of the promotion and deteriorating conditions at MTC had created a hostile work environment.

Vitug filed a two-count complaint on September 1, 1993, which he subsequently amended on January 21, 1994. Vitug first alleged that defendants wrongfully denied the promotion in June, 1991. Second, Vitug alleged that he was constructively discharged and forced to resign after various circumstances created an intolerable work environment. In addition, Vitug alleged that defendants' wrongful actions constituted discrimination based on his race, ethnic origin, and religion. Defendants moved for summary judgment on each claim asserting both procedural and substantive challenges.

In his July 27, 1994 Memorandum Opinion and Order ("Opinion"), Judge Aspen held that the claim based on MTC's failure to

---

**1.** *Christiansburg* involved a Title VII action; however, in *Hughes* the Supreme Court adopted the *Christiansburg* standard for all civil rights actions. Thus, the standard for assessing fees to

prevailing parties applies with equal force to motions brought under Title VII or Section 1988. *See Reichenberger v. Pritchard*, 660 F.2d 280, 288 (7th Cir.1981)).

promote was time barred under Title VII and Section 1981. As for the Title VII claim, Judge Aspen found that because MTC had fewer than 15 employees in Illinois and because it had no "public contract" with Illinois, the IDHR had no jurisdiction and Vitug's only relief could come through the EEOC which requires that a claimant make a charge to the EEOC within 180 days of the claimed discrimination. *See* 42 U.S.C. § 2000e–5(e). Vitug was denied the promotion on June 20, 1991, and since he did not file a charge of discrimination until April 10, 1992, Judge Aspen held the claim was time barred. Judge Aspen rejected Vitug's argument that he should be entitled to the extended filing period (300 days) provided by the IDHR. As for the Section 1981 claim, Judge Aspen found that the applicable statute of limitations for such claims is two years. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1308 (7th Cir.1989). Since the complaint was not filed until September 1, 1993, it was filed clearly in excess of two years from June 20, 1991, the date of the alleged discriminatory act. For these reasons, Judge Aspen granted defendants summary judgment on the "failure to promote" claims.

Judge Aspen further found that based on Vitug's pleadings and papers, the constructive discharge claims were predicated solely upon the defendants' decision not to award him the promotion. Judge Aspen noted that, significantly, Vitug never alleged any derogatory or insensitive comments regarding his race or ethnic origin.[2] Therefore, in order to succeed on his claim for constructive discharge under Title VII and Section 1981, Vitug would have to prove that the promotion process and/or decision was discriminatory, and that the discrimination was linked to his constructive discharge. Thus, Judge Aspen determined that the constructive discharge claim hinged on Vitug's ability to prove either disparate impact or disparate treatment relating to defendants' failure to promote him.

In assessing these theories, Judge Aspen evaluated Vitug's expert witnesses' affidavits and found that Vitug failed to provide adequate statistical evidence to support either a disparate impact or a disparate treatment claim as required by Seventh Circuit and Supreme Court case law. Vitug had responded to defendants' motion for summary judgment by filing the affidavits of Neil Lane, a statistician, and Jane Halpert, a psychologist. Judge Aspen found that Lane's affidavit problematic in that he failed to provide specific statistics and failed to compare them to the relevant labor market. As for Halpert, Judge Aspen found "a dearth of statistical data" to support her conclusions as to defendants' discriminatory practices. Judge Aspen concluded that Vitug "utterly failed to support his claim with any meaningful statistical evidence [and] [a]s a result, Vitug cannot establish a *prima facie* case, [thus] his disparate impact claim must fail." (Opinion, pp. 12–13).

In light of his conclusions as to Lane and Halpert's "empty" affidavits, Judge Aspen found the statistical evidence "not relevant" to the analysis of the "disparate treatment" claim. In addition, Judge Aspen found that the anecdotal evidence supplied in the affidavit of John Clancy, a former MTC employee, equally "uncompelling." As to the disparate treatment claim, Judge Aspen concluded that "[i]n sum, Vitug has offered nothing more than broad and unsubstantiated conclusions in support of his claim of discrimination. Absent meaningful statistical evidence or other indicia of discriminatory animus, Vitug cannot state a claim under either Title VII or § 1981." (Opinion, p. 15). For these reasons, Judge Aspen granted defendants' motion for summary judgment.

### IV. *Discussion*

Defendants contend that Judge Aspen's memorandum opinion and order granting their motion for summary judgment demonstrates the groundlessness of each of Vitug's claims and provides ample basis for assessing fees against Vitug.

---

**2.** While Vitug had asserted a claim based on religious discrimination, he conceded the issue when he failed to respond to case law which expressly holds that Section 1981 does not protect against religious discrimination. *See* Opinion, p. 8 n. 5.

■ The very nature of a grant of summary judgment seems to suggest the groundlessness of every claim so dismissed since, in granting summary judgment for a defendant, a court indicates that it has evaluated the evidence in the light most favorable to the plaintiff and has concluded that no reasonable jury could return a verdict for the plaintiff. *See Munson v. Friske*, 754 F.2d 683 (7th Cir.1985) (citing *Weit v. Continental Illinois Nat'l. Bank and Trust Co.*, 641 F.2d 457, 461 (7th Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982)). But, "groundless" in the context of an award of attorney's fees appears to differ from lack of merit of a claim as indicated by a grant of summary judgment. Indeed, the *Christiansburg* court denied attorney's fees to the very defendant to which it had granted summary judgment. It is clear that summary judgment does not automatically trigger an award of attorney's fees. Accordingly, the Seventh Circuit has held that the failure to adduce factual evidence to survive a motion for summary judgment does not alone render the action frivolous justifying an award of fees to the defendant. *Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir.1987); *Vandenplas v. City of Muskego*, 797 F.2d 425, 432 (7th Cir.1986). Moreover, the Court has required that district courts "must discuss specific information that formed the basis for the plaintiff's suit and must explain why this information did not constitute adequate factual substance for the commencement of a nonfrivolous civil rights case." *Coates v. Bechtel, supra*, 811 F.2d at 1051 (quoting *Hermes v. Hein*, 742 F.2d 350, 357 (7th Cir.1984)).

In *Kennedy v. McCarty*, 803 F.Supp. 1470, 1474 (S.D.Ind.1992), the district court, citing *Coates v. Bechtel, supra*, identified two periods throughout the litigation where a plaintiff's claim may be determined frivolous. The first inquiry considers the suit at the point it is initiated. At this point the court must assess, not whether the plaintiff's claim proved to be ultimately without merit, but whether the information available to the plaintiff at the time they initiated the lawsuit, the claim was frivolous, groundless or unreasonable. *Coates v. Bechtel, supra*, 811 F.2d at 1051. In fact, the Supreme Court held that "even when the law or the facts appear

questionable at the outset, a party may have an entirely reasonable ground for bringing suit." *Christiansburg Garment Co. v. E.E.O.C., supra*, 434 U.S. at 422, 98 S.Ct. at 701.

The second inquiry considers conduct of the parties during the course of the litigation to determine whether or not the plaintiff continued to litigate after it became clear that his claim lacked factual substance or was reasonably devoid of factual support. *Kennedy v. McCarty, supra*, 803 F.Supp. at 1474 (citing *Coates v. Bechtel, supra*, 811 F.2d at 1053, and *Hughes v. Rowe, supra*, 449 U.S. at 15, 101 S.Ct. at 179)).

■ Defendants have not argued, and this court has no reason to believe, that there is any question of bad faith in this case; therefore, the inquiry must proceed into whether the claims were frivolous, groundless or unreasonable when initiated or at some time during the course of the litigation. Defendants first argue that because Vitug was unable to unearth supporting facts, his claims satisfied the *Christiansburg* standards because "the relevant facts of this case have been known to Plaintiff from the start." However, as stated above, the relevant question at this stage is whether "based upon information known to the plaintiffs at the time they initiated their lawsuit, the claim was frivolous, groundless or unreasonable." *Coates v. Bechtel, supra*, 811 F.2d at 1051.

■ Vitug's claim of employment discrimination was based on a theory of failure to promote and a theory of constructive discharge. Defendants first argue that Vitug's pursuit of his claim based on a failure to promote demonstrates frivolous, groundless and unreasonable action because the claim was time barred. However, this court finds, based on a review of the pleadings, Judge Aspen's Opinion, and the case law, that the issue of timeliness, at least with respect to the Title VII portion of the claim, was one of first impression. An erroneous interpretation in a case of first impression ought not, by itself, lead to a conclusion of frivolity, unreasonableness or groundlessness. While Judge Aspen ultimately disagreed with Vitug's statutory interpretation and case law

analysis, it appears that Vitug made a colorable legal argument based (faultily, as it turns out) on *Gilardi v. Schroeder*, 833 F.2d 1226 (7th Cir.1987). For this reason, Vitug's filing and pursuit of his failure to promote a claim beyond the applicable limitations periods was not frivolous, groundless or unreasonable.

■ Defendants next contend that Vitug's constructive discharge claim was frivolous, groundless and unreasonable when initiated. It is clear from the Opinion that Vitug's constructive discharge claim was evaluated in light of two theories; one based on disparate impact and one based on disparate treatment. This court likewise addresses each theory individually. Judge Aspen found that in order to prevail on a theory of disparate impact discrimination, a plaintiff must first establish a *prima facie* case, and cited the holding in *Scales v. J.C. Bradford & Co.*, 925 F.2d 901 (6th Cir.1991), as a useful overview of the requirements:

> the plaintiff must establish a *prima facie* case by first identifying the specific employment practice that is challenged. Next, the plaintiff must show an adverse effect caused by the employment practice by offering "statistical evidence of a kind or degree of sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotion because of their membership in a protected group." *Id.* at 907–08. (Citations omitted.)

Vitug's second amended complaint clearly identifies the specific employment practice he challenges to wit: "the personal and oral interview and evaluation and word of mouth hiring." Judge Aspen found that Vitug failed at the next step which involves plaintiff's production of statistical evidence. Hence, Vitug's claim hinged on statistical evidence of the type that Vitug could not reasonably have known at the time of filing. Since discovery is anticipated (*see Wards Cove Packing v. Atonio*, 490 U.S. 642, 657, 109 S.Ct. 2115, 2124, 104 L.Ed.2d 733 (1989) ("liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their [Title VII] claims.")), and necessary to uncover such statistical evidence, Vitug's claim based on a theory of disparate impact cannot be considered to have been frivolous, groundless or unreasonable at the time it was initiated.

■ Vitug based his alternate theory of discrimination on disparate treatment. Noting that the burden of setting forth a *prima facie* case of disparate treatment was "not onerous," Judge Aspen held that in this case "Vitug must show that 1. he was qualified for the promotion he sought; 2. he was considered for the position and turned down; and 3. the promotion was given to someone else." (Opinion, p. 13). When considered in the light most favorable to Vitug, the record demonstrates that he had sufficient facts to satisfy each of these requirements. Specifically: 1. He was an auditor with MTC with a number of years of experience (Second Amended Complaint, ¶ 10b, Vitug's Resume); 2. He was interviewed as a candidate for the promotion (Koenig Affidavit, ¶ 2); 3. The promotion was given to another candidate (Second Amended Complaint, ¶¶ 10a, 10c; Koenig Affidavit, ¶¶ 6, 7). Judge Aspen found that Vitug's claim failed due to his inability to demonstrate that defendants' reason for not giving Vitug the promotion (*i.e.*, because he scored the lowest in the interview) was not the true reason for the decision. While Vitug proffered statistical and anecdotal evidence to support his contention of discriminatory animus, Judge Aspen rejected it as insufficient in law. Since he was, arguably, able to show a *prima facie* case and show, at least, some anecdotal evidence, he did not at the time of filing of suit, make a frivolous, groundless or unreasonable filing.

■ The next inquiry requires an examination of the course of the litigation. Defendants assert that Vitug continued to pursue his claims despite uncovering no factual support. Specifically, defendants contend that the failure of Vitug's expert to properly show that MTC's interview process had any effect on their hiring decisions, or to make proper statistical comparisons reflect incorrect legal arguments and insufficient factual evidence. Defendants conclude that these "fundamental legal and factual flaws ... make irresistible the inference that [Vitug] has pursued

groundless claims in this action." (Defendants' Brief in Support, p. 7).

This court first notes that from filing to disposition, this case lasted just over ten months, September 1, 1993 to July 27, 1994, and that defendants' motion for summary judgment was the first and only dispositive motion considered in the case. In light of the wide latitude afforded plaintiffs in the establishment of circumstantial evidence of discriminatory employment practices, it is clear that Vitug's pursuit of his claims did not constitute frivolous or unreasonable action. *See Hermes v. Hein, supra,* 742 F.2d at 350 (citing *Ekanem v. Health & Hospital Corp.,* 724 F.2d 563, 575 (7th Cir.1984), *cert. denied,* 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 40 (1984)). In two cases where attorney's fees were awarded the courts concluded from an evaluation of the course of litigation including discovery that in each case the plaintiff had turned the judicial system into a forum to air personal disputes and to carry out a personal vendetta. *See Munson v. Friske, supra,* 754 F.2d at 697 (noting that three years of discovery failed to produce any evidence to support plaintiff's claim), and *Kennedy v. McCarty, supra,* 803 F.Supp. at 1475. In another case, the court found that the plaintiff's action amounted to "nothing more than speculation as to defendants' motives" which is insufficient to support a lawsuit. *Munson v. Milwaukee Bd. of School Directors,* 969 F.2d 266, 270 (7th Cir. 1992). The record in this case supports neither conclusion.

In this case, Vitug engaged in discovery in response to defendants' motion for summary judgment. Based on this discovery, Vitug filed affidavits of two experts and an anecdotal witness to support his disparate impact and disparate treatment claims. Defendants, apparently not then so confident of the inadequacy of Vitug's evidence, felt compelled to enlist their own expert to support their motion. Judge Aspen considered all of the evidence and concluded that Vitug could not prove a claim under either Title VII or Section 1988. The record does not establish nor do defendants suggest at what point, other than after Judge Aspen's ruling, Vitug's pursuit of his claims became frivolous, groundless or unreasonable. Thus, an award of attorney's fees here would constitute the very type of *post hoc* reasoning against which the *Christiansburg* court warned.

## V. *Sufficiency of the Petition*

■ For the sake of completeness this court now addresses the sufficiency of defendants' petition for fees. Based on a review of the petition, this court finds the exhibits upon which it relies wholly inadequate to support an award of fees. First, regarding the documentation of expert fees in Exhibit 1, there is no indication when Landes performed her services or what hourly rate she charged. In addition, invoice 933235 documents a $250.00 charge for "telephone conference and material review" by "EGN." Although there is a passing reference to a "Dr. Neumann" in the supporting affidavit, there is no indication who this is, to what these services related or at what rate he/she bills. Further, the June 17, 1994 invoice from Lexecon, Inc. (an unidentified entity) lists one Hal Sider as having "reviewed E. Landes affidavit." Once again, there is no information on who he is or at what rate he bills. The invoices further show more than 14 hours of work by unnamed "Research Assistants" without any indication of their billing rate. Finally, each of the invoices in Exhibit 1 fail to adequately classify each task and the time spent performing that task; rather, several tasks, or several days' work, are clumped into one billing. For these reasons, this court find that the expert fees have been insufficiently documented to permit an award even if warranted.

■ Second, the legal services portion of the affidavit contains numerous omissions which make it difficult if not impossible to sufficiently evaluate the services and fees charged. The most glaring problem is the plethora of redactions in the "services provided" summaries. This court notes that of the 176 billing entries in Exhibit 2, 99 appear to have been redacted. The following are some representative examples:

9/13/93    C W Newcom "Reviewed _____; began preparation of Answer; discussed various issues re: _____ case with _____"

10/12/93    J G Fiero "Met with Mr. Newcom regarding _____ drafted _____"

10/19/93    C W Newcom "Reviewed issues _____ with Ms. Gaston"

11/5/93    C W Newcom "Met with _____ met with _____ to review _____ and discuss approaches _____"

11/24/93    J G Fiero "Research concerning _____ met with Mr. Newcom"

12/1/93    J G Fiero "Research on _____" (Exhibit 2).

This court is mindful that defendants claim to have made such redactions in an effort not to waive certain rights (*i.e.*, attorney-client privilege or attorney work product protection) during the pending appeal of this case; however, the result has been the exclusion of basic material information which undermines the integrity of the entire petition as it relates to this case. *See Tomazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir.1986) (affirming reduction in hours where plaintiff listed hours spent on "research" without saying what was researched).

Equally problematic is the failure to disclose time spent on separate tasks performed in the same day. As exemplified by some of the passages above, in almost every billing of more than two hours, several tasks are listed with no corresponding time allocated for each task—this practice has been disfavored as it makes evaluation of said services impossible. *See Domegan v. Ponte,* 972 F.2d 401, 425 (1st Cir.1992) (criticized "mixed entries"—the lumping together of different activities), *vacated and remanded on other grounds,* ——

3. Vitug challenged the sufficiency of the affidavit in support of the bill of costs because it did not state whether or not the costs had actually been paid. However, defendants have filed a supplemental affidavit of Charles W. Newcom which

U.S. ——, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993).

For these reasons, even if this court found that defendants were entitled to attorney's fees, the amount of said fees could not be determined based on the affidavits and exhibits. This court understands that sometimes a little judicious weeding can preserve a fee petition; however, in this case the "weeds," as enumerated above, have obscured the flowers and have choked the life from this petition.

## VI. *Bill of Costs*

Defendants have submitted a bill of costs for $1,726.10 ($1,558.10 for a transcript of Vitug's deposition and $168.00 for in-house photocopying). Other than noting the court's discretion regarding such costs, Vitug makes no challenge to the largest cost: for his deposition transcript.[3] Vitug does challenge the propriety of the in-house photocopying charges detailed in Exhibit B to the bill of costs. The Seventh Circuit has held that:

> "It is well settled that the district court has broad discretion when determining whether expenses claimed by the prevailing party are taxable as costs. This discretion, however, is not unfettered. In order for the district court to award costs to the prevailing party, the court must determine that the expenses are allowable cost items and that the costs are reasonable, both in amount and necessity to the litigation." *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 430 (7th Cir.1989).

*Commercial Credit Equipment Corporation v. Marion J. Stamps,* 920 F.2d 1361, 1367 (7th Cir.1990).

The affidavit of James G. Fiero details photocopying charges for documents filed in connection with defendants' successful motion for summary judgment. This court notes that this affidavit and exhibit clearly identify the documents copied and the cost per page of 12 cents. The copied documents were clearly necessary for the litigation of this case and therefore the defendants' copy-

states that these costs have been charged and paid by defendants. This supplemental affidavit has not been refuted and Vitug's challenge is deemed moot.

ing and use thereof was justified. Further, this court finds the cost of 12 cents page to be reasonable. *See Northbrook Excess & Surplus v. Procter & Gamble,* 924 F.2d 633, 643 (7th Cir.1991) (award of photocopying expenses of $50,930.45 within discretion of court when expressly found to be reasonable and justified).

### VII. *Recommendation*

For the above stated reasons, it is hereby recommended that defendants' motion for attorney's fees be denied and that defendants' bill of costs be allowed.

Dated: March 24, 1995.