**UNITY VENTURES, an Illinois Partnership, LaSalle National Bank, as Trustee under Trust 103331 and William Alter, Plaintiffs–Appellees,**

**v.**

**COUNTY OF LAKE, Village of Grayslake, Norman C. Geary, George Bell and Edwin M. Schroeder, Defendants–Appellants.**

No. 89–1122.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1989.

Decided Jan. 29, 1990.

Merle L. Royce, James H. Ryan, Keck, Mahin & Cate, Thomas H. Neuckranz, Williams & Montgomery, James P. Chapman (argued), Alan S. Mills, Chapman & Associates, Robert Zaideman, Jerry A. Esrig, Epstein, Zaideman & Esrig, Chicago,

Ill., Helen Rozenberg, Gary Neddenriep and Gerald P. Callaghan, Asst. States Attys., Waukegan, Ill., for plaintiffs-appellees.

Robert C. Newman, Clifford L. Weaver (argued), Charles D. Knight, Burke, Bosselman & Weaver, Chicago, Ill., Rudolph F. Magna, Jr., Gurnee, Ill., for defendants-appellants.

Before CUDAHY, POSNER and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

After obtaining a judgment notwithstanding the verdict, Lake County[1] petitioned the district court for attorney's fees, alleging that William Alter had brought his antitrust and civil rights action in bad faith. The district court denied the petition; Lake County now asks us to reverse that decision.

I.

The facts of this case have been twice recorded by federal courts. *See* 631 F.Supp. 181 (N.D.Ill.1986), *aff'd,* 841 F.2d 770 (7th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). A complete recitation of the facts may be found in the prior opinions of the district court and the court of appeals. For present purposes, however, only a brief summary is necessary.

In the early 1970s, William Alter obtained an option to purchase 585 acres of farmland, known as the Unity property, in unincorporated Lake County, Illinois. The Unity property was located south of Grayslake and southeast of Round Lake Park; Alter decided to enter into an annexation agreement with Round Lake Park to develop the property. On October 21, 1976, Alter exercised his option to purchase the Unity property.

At this point, Alter needed to connect the Unity property to a regional sewer interceptor pipeline so that sewage generated on the property could be transported to a regional treatment plant. Two Lake Coun-

ty regional interceptor pipelines were located in the vicinity of the property: the Northwest Central Interceptor (which served Round Lake Park and its surrounding communities) and the Northeast Central Interceptor (which served Grayslake and its surrounding communities). Unbeknownst to Alter, Lake County and Grayslake had agreed earlier that Lake County would "preserve the function of County [Northeast Central] interceptors located within the sphere of influence of the Village ... by not permitting any direct connection hereto by any person, firm, corporation or municipality unless the Village consents in writing to such direct connection." *Unity Ventures v. County of Lake,* 631 F.Supp. at 185.

Alter drafted plans to connect the Unity property to the Northeast Interceptor, which he submitted to the County in August 1978; Martin Galantha, the Director of the Lake County Public Works Department, approved the plans and sent them to Grayslake Mayor Edwin M. Schroeder for his consideration (pursuant to the "sphere of influence" agreement). Mayor Schroeder then met with Round Lake Park Mayor Walter Bengson and others to discuss the connections to the Unity property; at the conclusion of the meeting, Mayor Schroeder refused to consent to the development.

As a result of Mayor Schroeder's refusal, Alter persuaded neighboring Round Lake Park to obtain a variance from the Illinois Pollution Control Board that would permit the construction of an independent sewage treatment plant to serve the Unity property. Two years later, in December 1980, the Grayslake Board of Trustees adopted a resolution that would allow Alter to connect the Unity property to the Northeast Interceptor, provided that Round Lake Park agreed not to annex a 2500-acre parcel, known as the Heartland property, also located in Lake County. Round Lake Park refused and authorized the annexation of the Heartland property; as a result, Grayslake rescinded its offer and filed objections

---

1. Unless otherwise indicated, this opinion will refer to the appellants collectively as "Lake County" and to the appellees collectively as "Alter."

to the construction of the proposed independent sewage treatment plant with the Illinois Environmental Protection Agency.

Alter brought suit, alleging, in addition to antitrust claims, that Lake County had "conspired to prevent the development of [plaintiffs'] land by a series of wrongful acts, including denying access to sanitary sewer service, in violation of plaintiffs' rights under the due process and equal protection clauses of the Fourteenth Amendment and the Civil Rights Act of 1871, 42 U.S.C. § 1983." 631 F.Supp. at 185.

On January 12, 1984, a jury returned a verdict in favor of Alter and other plaintiffs, awarding them $9.5 million in damages (which was later trebled) on the antitrust and civil rights claims. Upon Lake County's timely motion, Judge Bua reconsidered the case and—basing his decision on state action immunity under antitrust law and qualified immunity from civil rights suits for damages—granted Lake County's request for judgment notwithstanding the verdict. 631 F.Supp. 181 (N.D.Ill.1986). A panel of this circuit affirmed on other grounds, holding that Alter's failure to make a formal application for sewer connections to Grayslake or Lake County—and his corresponding failure to receive a *final decision* from the County— meant that his claim was not ripe for adjudication. 841 F.2d 770 (7th Cir.1988).

Fresh from its legal victory, Lake County asked the district court to consider its motion for attorney's fees. The district court denied the motion, and Lake County now asks us to reverse that decision.

## II.

■ This is not the first time Lake County has requested us to award attorney's fees in this case. Shortly after this court affirmed the district court's judgment notwithstanding the verdict, Lake County filed a motion for an award of attorney's fees incurred in defending its case on appeal. The panel denied that motion on June 22, 1988; Alter now argues that our denial of Lake County's motion has become the "law of the case" and precludes us from granting the attorney's fees which are now requested.

It has long been established that " 'matters decided on appeal become the law of the case to be followed ... on second appeal, in the appellate court unless there is plain error of law in the original decision.' " *Appleton Elec. Co. v. Graves Truck Line, Inc.,* 635 F.2d 603, 607 (7th Cir.1980) (quoting *Kaku Nagano v. Brownell,* 212 F.2d 262, 263 (7th Cir.1954)), *cert. denied,* 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981). Of course, the doctrine can be applied only if a party attempts to reargue the *same* matter on second appeal. That is not the case here. In its earlier motion, Lake County asked us to award "attorney's fees incurred *in the defense of th[e] appeal."* Appellees' Motion for Attorney's Fees at 1 (emphasis supplied). Our decision, then, not to award fees was based solely on the justification for the appeal; it had little to do with the justification for the original lawsuit.

The Eleventh Circuit reached a similar conclusion in *Sherry Manufacturing Co. v. Towel King of Florida,* 822 F.2d 1031 (11th Cir.1987). There, Sherry Manufacturing obtained a judgment against Towel King in the district court for copyright infringement and unfair competition. The court of appeals reversed and remanded, but denied Towel King's motion for attorney's fees incurred on its appeal. On remand, the district court approved a magistrate's recommendation that attorney's fees be awarded to Towel King for work at trial. Sherry Manufacturing challenged this determination on appeal, arguing (like Alter) that the appellate court's previous denial of attorney's fees established the binding law of the case. The court of appeals disagreed: "Our determination that Towel King is not entitled to attorney's fees for the work it did in perfecting its earlier appeal to this court does not foreclose the district court's independent determination that fees are appropriately awarded for work undertaken by Towel King in preparation for trial." *Id.* at 1033 n. 1. *Cf. Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 713 F.2d 128, 131 (5th

Cir.1983) (court of appeals's assessment of appellate costs is unrelated to district court's assessment of trial costs).[2] Likewise, we conclude that the law of the case does not preclude us from considering the fees denied by the district court.[3]

### III.

Lake County argues that the district court abused its discretion in denying attorney's fees. Lake County contends that Alter brought his action in bad faith—that he falsely claimed he applied for a connection to the Northeast interceptors, that he falsely claimed he was denied access to both the Northeast and Northwest Central interceptors and that he knew he could not prove injury or damages. Further, Lake County contends that it is entitled to attorney's fees as the prevailing defendant under 42 U.S.C. section 1988.

Generally, litigants in the United States must pay their own attorney's fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Of course, there are exceptions to this rule: "It has long been established that even under the American common-law rule attorney's fees may be awarded against a party who has proceeded in bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). And Congress has provided other exceptions. 42 U.S.C. section 1988, for example, authorizes courts to award attorney's fees incurred in civil rights litigation conducted pursuant to 42 U.S.C. section 1983: "[T]he court, in its

discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

 Both prevailing plaintiffs and prevailing defendants may collect attorney's fees under section 1988; different standards—reflecting different policy considerations—apply, however, depending on whether the plaintiff or the defendant prevails. A plaintiff, for example, may be awarded attorney's fees as a prevailing party if she succeeds on " 'any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting, in part, *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). A prevailing defendant, on the other hand, must demonstrate that the plaintiff brought her action in subjective bad faith, or that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith" in order to collect attorney's fees. *Christianburg*, 434 U.S. at 421, 98 S.Ct. at 700. To this end, we have written:

> In seeking to determine whether a suit is frivolous, unreasonable, or groundless, courts have focused on several factors. Among those considered are whether the issue is one of first impression requiring judicial resolution; whether the controversy is sufficiently based upon a real threat of injury to the plaintiff; whether the trial court has made a finding that

---

**2.** Alter cites this court's opinion in *Barrington Press, Inc. v. Morey*, 816 F.2d 341 (7th Cir.), *cert. denied*, 484 U.S. 906, 108 S.Ct. 249, 98 L.Ed.2d 207 (1987), for the proposition that once a court of appeals affirms a district court's award of attorney's fees, that decision becomes the law of the case. *Barrington Press*, however, is a very different case than the one now before us; in *Barrington Press*, we affirmed the district court's decision, which included the assessment of attorney's fees "incurred in the collection of the amount for which the defendants are liable as provided in the promissory notes." *Barrington Press*, 816 F.2d at 342 (quoting *Barrington Press, Inc. v. Morey*, No. 81 C 1669, Order at 9 (N.D.Ill., Apr. 22, 1983)). We drew no distinction in *Barrington Press* between attorney's fees incurred in the preparation of the trial and the

appeal. Here, in *Unity Ventures*, such a distinction is readily apparent: in the first proceeding, we considered only the attorney's fees related to the appeal. We have never addressed the district court's refusal to award attorney's fees for the trial.

**3.** This conclusion is supported by the unique procedural posture of the case. Lake County timely filed its petition for attorney's fees in district court; that court, however, stayed consideration of the petition pending the outcome of Alter's appeal. It was only after our decision on the ripeness issue that the district court denied the request for attorney's fees. Thus, we have never considered the propriety of the district court's ruling on attorney's fees.

the suit was frivolous under the *Christianburg* guidelines; and whether the record would support such a finding. *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981) (citations omitted). Further, "the standard of review of a court's award of attorney's fees to the prevailing party under § 1988 is whether the trial court abused its discretion in making or denying the award." *Id.; see Coates v. Bechtel,* 811 F.2d 1045, 1051 (7th Cir.1987) (award of attorney's fees committed to discretion of trial court).

Whether Alter brought a "frivolous, unreasonable, groundless" or bad faith suit—and whether Judge Bua abused his discretion in denying Lake County's motion for attorney's fees—depends, in this case, almost entirely upon Alter's alleged attempt to connect the Unity property to one of the two regional sewer interceptor pipelines. Lake County offers two allegations here: first, Alter falsely claimed that the Village of Grayslake denied him a connection to the *Northeast* system; and second, Alter misled the district court by alleging that Lake County prevented him from connecting to a regional sewer interceptor pipeline, when, in fact, Alter never attempted to connect to the *Northwest* system.

### A. Alter's "Application" to the Northeast System

■ Neither party disputes that Alter made *some* attempt to connect the Unity property to the Northeast system; the parties disagree, however, on the sufficiency of Alter's attempt. Alter argues that Grayslake Mayor Schroeder rejected his request to connect to the Northeast system; since Grayslake's "sphere of influence" agreement gave it virtual veto power over new connections to the Northeast system, Alter considered further action to be futile. Further, Alter argues that the Village Board sanctioned Mayor Schroeder's meeting, that the Village Board urged the County Board to affirm Grayslake's veto of the connection, that the County Public Service Committee voted to defend Grayslake's veto and that Grayslake conditionally approved and then rescinded its approval of the connection. These actions, argues Alter, constitute the appellants' denial of a connection to the Northeast system. On the other hand, Lake County characterizes the October 1978 meeting between Alter and Mayor Schroeder as "informal," and notes that Alter neither submitted required documents to the Illinois Environmental Protection Agency nor sought further action from the Grayslake Board of Trustees or the Lake County Board of Trustees. Therefore, contends Lake County, Alter was never denied access to the Northeast system.

This dispute was at the focus of our decision in *Unity Ventures v. County of Lake,* 841 F.2d 770 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). There we held, as a matter of law, that Alter's claims were not ripe for adjudication because he never "obtained a final decision on [his] application for a sewer connection; indeed, [he] failed even to present a formal application to either the Village of Grayslake or Lake County regarding the Northeast interceptor." *Id.* at 776. We based our holding on two recent supreme court decisions, *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), and *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), both of which were decided *after* the district court had acted on the merits. In *Yolo County* and *Williamson County,* the Court considered the takings claims to be premature because the plaintiffs had not obtained *final* decisions "regarding the application of the zoning ordinance and subdivision regulations to [their] propert[ies]." *Yolo County,* 477 U.S. at 349, 106 S.Ct. at 2566; *Williamson County,* 473 U.S. at 186, 105 S.Ct. at 3116. We also noted in *Unity Ventures* that the Ninth Circuit, drawing upon *Yolo County* and *Williamson County,* applied the Court's takings analysis to claims involving equal protection and substantive due process: "In *Kinzli,* we interpreted *Williamson* and *MacDonald* to require a *final decision* by the government which inflicts a concrete harm upon the plaintiff landowner." *Her-*

*rington v. County of Sonoma,* 834 F.2d 1488, 1494 (9th Cir.1987) (emphasis in original), *cert. denied,* — U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989); *see Kinzli v. City of Santa Cruz,* 818 F.2d 1449 (9th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988).

Had these principles been firmly fixed in our jurisprudence before the district court decided the merits, Alter's action might have been "frivolous, unreasonable or groundless." But all of these cases were decided *after* Judge Bua issued his opinion. And the Supreme Court has cautioned lower courts not to rely upon 20–20 hindsight when deciding if a plaintiff's suit is frivolous, unreasonable or groundless:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.... No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. *The law may change or clarify in the midst of litigation.*

*Christianburg,* 434 U.S. at 421–22, 98 S.Ct. at 700 (emphasis supplied); *see LeBeau v. Libbey–Owens–Ford Co.,* 799 F.2d 1152, 1160 (7th Cir.1986), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987).

Lake County is left with one argument; it urges that "the fundamental principle of ripeness is as old as the hills," and that "it is not surprising that this Court's analysis would discuss and rely on the most recent cases [*Williamson, MacDonald* and *Kinzli*]." Appellants' Reply Brief at 9. Certainly, the ripeness doctrine is no newcomer to American jurisprudence. But we believe that the scope of this doctrine in the instance of due process and equal protection claims has been clarified only recently by *Kinzli* and *Sonoma County.* Indeed, not until the Ninth Circuit decided these cases had any federal court extended the *Williamson* and *MacDonald* takings holdings to due process and equal protection claims.

Lake County contests this point, arguing that *Agins v. City of Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) —a case decided before Judge Bua issued his opinion—clearly held that a plaintiff's case is not "ripe" unless he had previously sought approval from the necessary parties under local zoning ordinances. *Id.* at 257, 260, 100 S.Ct. at 2139, 2141. But *Agins,* like *Williamson* and *MacDonald,* was a takings case, not a due process or equal protection case. More important, the plaintiffs in *Agins* "never ... sought approval for development of their land...." 447 U.S. at 257, 100 S.Ct. at 2140 (emphasis supplied). Alter, on the other hand, sought approval for his development from Mayor Schroeder, who rejected the plan. Moreover, *Agins* required only that a party submit a plan for developing its property. *Williamson,* 473 U.S. at 187, 105 S.Ct. at 3117. That is not sufficient by itself, however, to make the case ripe for adjudication under *current law; Williamson* adds that the party must also pursue other available avenues (including variances) that would have allowed development of the property. *Id.* at 187–88, 105 S.Ct. at 3117. Lake County faults Alter for not pursuing these additional options, but they were not clearly required by *Agins.* We will not demand that Alter predict with total accuracy the development of complex legal doctrines. Hence, his claim was not frivolous, unreasonable or groundless.

Further, we have written that "a plaintiff's case that survives a motion for a directed verdict is not a frivolous suit." *LeBeau,* 799 F.2d at 1159; *see Soderbeck v. Burnett County,* 752 F.2d 285, 295 (7th Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). Not only did Alter's case survive Lake County's motion for a directed verdict, but it persuaded a jury to award $9.5 million due to Lake County's conduct. Judge Bua overruled this award in his post-verdict opinion, but that, by itself, does not make Alter's case frivolous. Indeed, Alter persuaded both Magistrate Lefkow and Judge Bua—before the issuance of *Williamson County* and

*Yolo County*—that Alter's claim *was ripe* because "a request had been made and denied ... any more formal application would have been futile." Report and Recommendation of Magistrate Lefkow at 11 (Feb. 9, 1983).[4] We therefore conclude, with respect to the Northeast interceptor claim, that Judge Bua did not abuse his discretion in denying Lake County's motion for attorney's fees.

### B. The Northwest System

Lake County further charges that Alter brought his claim in bad faith because he never attempted to connect the Unity property to the *Northwest* interceptor system, which served Round Lake Park:

Having annexed to Round Lake Park, Alter thus had two potential interceptors from which to obtain service. In addition to seeking service from the Northeast Central system, he could have sought to amend the edge of the interceptor boundaries on which he lay, to take advantage of the Northwest system. He did not.

Appellants' Brief at 16. We need not decide here whether Alter was required to seek an amendment of the interceptor boundaries before his claim would have been ripe; his decision to concentrate on the Northeast system seems justified in light of remarks made in Lake County Public Works Director Martin Galantha's letter to the Lake County State's Attorney: Alter's "development ... is situated within the Des Plaines River watershed and [is] more appropriately served by the County's existing North East Central regional sewer system," Appellees' Brief at 22, and "the Unity property, because it lay within the Des Plaines River basin, 'should be tributory [sic] to the County's Northeast Central interceptor system.'" 841 F.2d at 773. Perhaps, in light of *Williamson* and *MacDonald*, Alter should have pursued the matter further. But we will not hold Alter to legal standards still undeveloped at the time of his lawsuit.

**4.** Although Judge Bua did not address the ripeness issue in his opinion, he could not have reached the merits of the case had he disagreed

### C. Proof of Injury and Damages

Lake County argues that Alter could not prove that he suffered any injury or damages; therefore, Lake County urges that Alter brought his claim in bad faith. Specifically, Lake County asserts first that Alter knew he could not have obtained the financing necessary to build his proposed development, and second that he knew he could not have built and sold the development during the early 1980s. Lake County's position, at bottom, seems to be a challenge to the sufficiency of the evidence. Lake County bears a heavy burden in this regard. Both parties presented expert testimony and documentary evidence regarding Alter's ability to obtain financing and to build and sell the development; that the jury believed Alter's experts—and not Lake County's—strongly suggests that the claim was not brought in bad faith. *See IPEC Inc. v. International Lithographing Corp.*, 869 F.2d 1080, 1083 (7th Cir.1989). Moreover, Judge Bua did not question this part of the jury's general findings in his opinion.

### IV.

Lake County's final contention is that the case should be remanded to the district court because Judge Bua did not explain his denial of the motion for attorney's fees. Lake County relies upon our decision in *Tarkowski v. County of Lake*, 775 F.2d 173 (7th Cir.1985), in which we concluded that once a defendant establishes a prima facie entitlement to attorney's fees, the district judge must "explain[ ] his refusal to grant the motion." *Id.* at 176. In *Tarkowski*, the district judge provided us with *no reason* for his refusal to award attorney's fees; in the case now before us, however, the district court's reasons for denying attorney's fees are strikingly clear:

MR. CHAPMAN: ... We have had a very unusual history both factually and particularly from the law as it developed from when your Honor was first exposed to it.

with Magistrate Lefkow on this issue. He therefore must have agreed at that time that the case was ripe for adjudication.

---

THE COURT: That is an understatement. (Laughter)

MR. CHAPMAN: And I think in that case, and as I said, your Honor, when they filed their motion for fees in the Seventh Circuit, given the history of the law which neither your Honor, nor we, nor anyone could anticipate, as it developed in 1985 and 1987, and then have the Seventh Circuit decide the case based upon Ninth Circuit decisions that came down eleven months after the oral argument, and then to have the Seventh Circuit even deny costs to the defendants, it seems a little late in the day to claim that this case is frivolous. It became one of the most unusual and is still considered one of the most outstanding legal cases in the country in this field.

THE COURT: I agree with you.

MR. CHAPMAN: And I believe it demeans the court and it demeans the seriousness with which the parties fought before your Honor and in the Seventh Circuit to now say that this case is frivoulous [sic].

THE COURT: I quite agree, and the court will deny the defendants' motion for attorneys' fees.

Transcript of Motion Proceedings at 4–5 (Dec. 6, 1988). Judge Bua's reasons for denying the defendant's motion are evident from this colloquy in open court; further, Judge Bua's denial of the motion is well-supported by the facts. We therefore see no reason to remand the case to the district court for any further proceedings.

## V.

Unlike our British colleagues, we generally do not award attorney's fees to the prevailing party in a lawsuit. Congress has developed—and the common law has recognized—various exceptions to this general rule, but Lake County has failed to persuade us that any of these exceptions should apply to this case. The judgment of the district court denying the motion for attorney's fees is therefore

AFFIRMED.