45 F.3d 223
 31 Fed.R.Serv.3d 102, 97 Ed. Law Rep. 124
 Anthony F. BISCIGLIA, Plaintiff-Appellant,
v.
KENOSHA UNIFIED SCHOOL DISTRICT NO. 1, William M. Neiman,
Barbara Ervin, James Metallo, Roger Lemnus, Mary Jonker,
Sally Yule-Mengo and Joyce Rehlke, in their official
capacities as members of the Kenosha Unified School District
No. 1 School Board, Defendants-Appellees.
 No. 93-2850.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Jan. 20, 1994.
Decided Jan. 19, 1995.
 
 1
 William E. McCardell, Monica Burkert-Brist, DeWitt, Porter, Huggett, Schumacher & Morgan, Madison, WI, for plaintiff-appellant.
 
 
 2
 Ronald J. Kotnik, Lathrop & Clark, Madison, WI, Raymond J. Pollen, Mary B. Castino, Timothy F. Mentkowski, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for defendants-appellees.
 
 
 3
 Before CUDAHY and RIPPLE, Circuit Judges, and WILLIAMS, District Judge.*
 
 
 4
 ANN CLAIRE WILLIAMS, District Judge.
 
 
 5
 This appeal arises out of plaintiff-appellant Anthony Bisciglia's ("Bisciglia") lawsuit against Kenosha Unified School District No. 1 ("School District") and members of the Kenosha Unified School District No. 1 School Board ("School Board") for their alleged failure to provide due process in connection with plaintiff's then-impending termination hearing. Five months after the case was removed to the district court, Bisciglia responded to defendants' motion for summary judgment and imposition of attorney's fees by seeking leave to file an amended complaint alleging a single claim under 42 U.S.C. Sec. 1981 for discrimination based upon his Italian ethnicity. Defendants' motion was granted and plaintiff's motion was denied. Bisciglia appeals the award of Rule 11 sanctions against him and the denial of his motion for leave to amend. We affirm in part, and reverse in part.
 
 I. Background
 
 6
 Bisciglia has been the Superintendent of Schools for the School District since 1989, and was employed pursuant to an employment contract which was to expire on June 30, 1994. However, on August 11, 1992, Bisciglia was informed that certain School Board members wanted him relieved of his duties and that a special meeting would take place on August 26, 1992 to consider his continued employment as Superintendent.[1]
 
 
 7
 Eight days before the scheduled hearing, Bisciglia received an eleven-page synopsis of the allegations against him and 294 supporting documents. On August 21, 1992, plaintiff was informed by the School Board's counsel that the scheduled hearing could result in his unilateral discharge.
 
 
 8
 After his requests for a postponement of the hearing were denied, Bisciglia filed a complaint in the Circuit Court for Kenosha County, Wisconsin on August 25, 1992, alleging breach of contract, breach of the implied covenant of good faith, and a claim under 42 U.S.C. Sec. 1983 for denial of due process. In particular, Bisciglia claimed that he was denied adequate notice to prepare for his hearing and deprived of an impartial tribunal. He sought a writ of prohibition restraining the School Board from taking further action against him until further order of the court, an order appointing an impartial tribunal to evaluate his performance, damages, and attorney's fees.
 
 
 9
 At the same time that the complaint was filed, Bisciglia moved for a Temporary Restraining Order ("TRO") to postpone the August 26, 1992 hearing. On August 25, 1992, Judge Bastianelli granted the TRO restraining the School Board from taking any action or conducting the hearing concerning Bisciglia's employment, and set an August 28, 1992 hearing date to determine whether a writ of prohibition should issue.
 
 
 10
 Subsequently, on September 10, 1992, a substituted state court judge, Judge Mueller, heard oral argument on whether the TRO should continue. On September 18, 1992, the court denied plaintiff's request for further injunctive relief in a written opinion. Noting that the School Board had a statutory right and duty to consider the dismissal of its administrators, the court determined: "On the record before it, and under existing case law, this court cannot find that the Board has demonstrated a bias that would disqualify it under the due process clause from meeting to consider the employment status of the plaintiff." (Record on Appeal at 10). However, in reaching that conclusion, the court agreed that the original notice to Bisciglia was "questionable," but determined that the one month that had elapsed in the interim had afforded plaintiff adequate time to prepare.
 
 
 11
 On September 22, 1992, defendants removed the case to the United States District Court for the Eastern District of Wisconsin. Two months later, the School Board conducted a public hearing on Bisciglia's employment. The hearing took place on November 4, 5, 12 and 13 and was adjourned on Nov. 13, 1992 without the School Board taking any further action.
 
 
 12
 On December 1, 1992, the School Board president lost a recall election. The next day, defendants moved for summary judgment, sanctions and attorney's fees on the grounds that plaintiff's complaint was not legally viable when filed and had become frivolous over the passing months. On December 5, 1992, the School Board vice-president voluntarily resigned. Three days later, the newly reconstituted School Board dropped all charges against Bisciglia and extended his contract for another year to June 30, 1995.
 
 
 13
 On February 5, 1993, after several court-approved extensions of time, Bisciglia filed a brief in opposition to defendants' motion for summary judgment and sanctions, and a motion for leave to file an amended complaint. Plaintiff argued that there was no basis for sanctions and that the summary judgment motion should be denied as moot in light of his proposed amended complaint alleging only a single claim under 42 U.S.C. Sec. 1981 for unlawful discrimination. In support of the motion, Bisciglia attached an affidavit explaining that the charges against him had been dropped, and that the original lawsuit had been filed in good faith because he believed that it was the only way to prevent the predetermined termination of his employment at a hearing by a biased tribunal. Plaintiff also swore that he was bringing the discrimination claim because more facts had been brought to light about certain board members' bias against him based upon his Italian ethnicity.
 
 
 14
 On July 2, 1993, the court granted summary judgment in defendants' favor after determining, inter alia, "[i]f it was not clear from the start, it certainly was clear after Judge Mueller issued her decision on the Motion for Temporary Restraining Order that this was a non-justiciable dispute." Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 149 F.R.D. 588, 590 (E.D.Wis.1993). For that same reason, the district court also reasoned that sanctions should be awarded under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), stating "Bisciglia's continued efforts in pursuing his causes of action were not warranted by law because they, at that point in time, simply did not exist and hence were non-justiciable."[2] (Id. at 591). Finally, the district court denied Bisciglia's motion to amend on the grounds that Section 1981 provides relief only for discrimination based upon race.
 
 II. Standard of Review
 
 15
 We employ a discretionary standard of review to the award of sanctions and denial of leave to amend the complaint. "We review a district court's decision to impose Rule 11 sanctions under an abuse of discretion standard." Pacific Dunlop Holdings, Inc. v. Barosh, 22 F.3d 113, 118 (7th Cir.1994). The decision whether to grant or deny leave to amend is also within a district court's sound discretion, and is therefore, reviewed under that same standard. See Villa v. City of Chicago, 924 F.2d 629, 632 (7th Cir.1991).
 
 
 16
 "We review de novo a district court's grant of summary judgment, viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion." Cincinnati Ins. Co. v. Star Fin. Bank, 35 F.3d 1186, 1189 (7th Cir.1994).
 
 III. Discussion
 
 17
 Bisciglia argues that the district court erroneously awarded sanctions, should not have dismissed his complaint on summary judgment, and abused its discretion in denying his motion for leave to amend the complaint. We address each of these arguments in turn.
 
 A. Award Of Sanctions Under Rule 11
 
 18
 Bisciglia contends that Rule 11 sanctions were improperly imposed against him because his state court complaint cannot provide a basis for the imposition of sanctions under the Federal Rules of Civil Procedure. In short, plaintiff argues that since he did not oppose defendants' motion for summary judgment by filing frivolous papers in federal court, there can be no Rule 11 sanctions based upon the filing of his allegedly frivolous complaint in state court. Additionally, Bisciglia claims that Rule 11 sanctions cannot be imposed based upon an alleged failure to update or amend his original state court complaint. We agree.
 
 
 19
 At all times relevant here, Rule 11 provided in pertinent part:
 
 
 20
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature ... constitutes a certificate by the signer that the signer has read the pleading, motion, or paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation.
 
 
 21
 Fed.R.Civ.P. 11.[3] In Schoenberger v. Oselka, 909 F.2d 1086 (7th Cir.1990), this court made clear that "Rule 11 only provides sanctions for papers signed and filed in the federal court." Id. at 1087; see also Burda v. M. Ecker Co., 954 F.2d 434, 440 n. 7 (7th Cir.1992) (noting that the district court "could not have imposed Rule 11 sanctions for the state-court filing"); Dahnke v. Teamsters Local 695, 906 F.2d 1192, 1199 (7th Cir.1990) ("federal courts may not properly sanction the signer under Rule 11 for conduct occurring solely in state courts or administrative tribunals"). Moreover, we have also held that Rule 11 did not impose a continuing duty on signers to update or correct previously filed pleadings and papers.[4] See Schoenberger, 909 F.2d at 1087; Dahnke, 906 F.2d at 1201.
 
 
 22
 Therefore, Rule 11 sanctions could only have been appropriately awarded in this case based upon frivolous filings in the federal district court.[5] For example, Rule 11 sanctions could be imposed if Bisciglia signed and filed an amended complaint that violated Rule 11, or signed and filed any paper opposing the dismissal of his frivolous complaint. See Schoenberger, 909 F.2d at 1088. Here, Bisciglia's brief opposing defendants' summary judgment motion argued that defendants' motion was moot in light of his proposed amended complaint abandoning all of his original claims.[6] Plaintiff also argued that sanctions were unwarranted because his original complaint was filed in good faith. In our view, these federal court filings cannot support the imposition of Rule 11 sanctions.
 
 B. Award Of Sanctions Under Section 1988
 
 23
 Defendants acknowledge that the district court erroneously awarded attorney's fees under Rule 11, but argue that the fee award should not be disturbed because they are "prevailing parties" under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. Sec. 1988.[7] We disagree.
 
 Section 1988 provides in relevant part:
 
 24
 In any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs.
 
 
 25
 42 U.S.C. Sec. 1988. Despite its neutral wording, the purpose of Section 1988 "was to encourage meritorious civil rights litigation by allowing prevailing plaintiffs to obtain an award of attorney's fees almost as a matter of course but prevailing defendants only if the suit was frivolous." Bittner v. Sadoff & Rudoy Indus., 728 F.2d 820, 829 (7th Cir.1984). A plaintiff may be awarded attorney's fees as a prevailing party if he succeeds on " 'any significant issue in litigation which achieves some of the benefit he sought in bringing suit.' " Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)). In contrast, a prevailing defendant must demonstrate that the plaintiff brought his action in subjective bad faith, or that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); Unity Ventures v. County of Lake, 894 F.2d 250, 253 (7th Cir.1990). Moreover,
 
 
 26
 In seeking to determine whether a suit is frivolous, unreasonable, or groundless, courts have focused on several factors. Among those considered are whether the issue is one of first impression requiring judicial resolution; whether the controversy is sufficiently based upon a real threat of injury to the plaintiff; whether the trial court has made a finding that the suit was frivolous under the Christiansburg guidelines; and whether the record would support such a finding.
 
 
 27
 Unity Ventures, 894 F.2d at 253-54. Here, defendants claim that the suit was frivolous and they are entitled to Section 1988 fees because "Judge Mueller's decision should have alerted plaintiff and his counsel that the complaint did not contain viable causes of action." (Appellees' Brief at 17). We disagree for the following reasons.
 
 
 28
 Judge Mueller's decision addressed the propriety of continuing the temporary injunction that had been entered against defendants. In considering that question, she considered whether the injunction was necessary to preserve the status quo, the lack of an adequate remedy at law, the probability of plaintiff's success on the merits, and the irreparable harm to plaintiff if the injunction did not issue. The judge quickly disposed of the state law claims after concluding that there was an adequate remedy at law for the breach of contract, and noting that Wisconsin did not recognize the tort of bad faith breach of an employment contract. She then noted that the critical question was whether Bisciglia had shown a reasonable probability of success on the merits of his due process claim under Section 1983.
 
 
 29
 In this regard, the judge determined that plaintiff's inadequate notice claim would no longer support a claim for denial of due process because of the intervening passage of time. The judge then explained that "[t]he real crux of plaintiff's due process argument goes to the issue of whether certain members of the School Board are biased in some fashion prohibited by the due process guarantees of the Fourteenth Amendment." (Appellant's Appendix at 32). After noting the presumption that the School Board would act with honesty and integrity, the judge correctly stated that Bisciglia would have to show "a high degree of bias disqualifying the adjudicator." (Id. at 33). After careful review of the facts and the controlling law, Judge Mueller determined that the record "did not reveal that degree of bias on the part of any member of the Board." Id. In reaching this conclusion, the judge noted:
 
 
 30
 While not insensitive to the concerns expressed by Mr. Bisciglia, this court does not possess a roving commission to do good. It must make a decision based upon the record and the law. And the law is clear that, at this stage of the proceedings and on this record, a temporary injunction may not issue to prohibit the defendants from meeting to take action on the plaintiff's employment status.
 
 
 31
 (Id. at 35). Although this decision was certainly supported by the law and the facts, unlike the district court, we are not persuaded that it should form the basis for an award of fees.[8]
 
 
 32
 The judge merely denied plaintiff's motion for a temporary injunction, but properly acknowledged that there are situations in which "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). The decision alerted plaintiff to the fact that his affidavits regarding School Board members' public statements would be insufficient to overcome their presumption of honesty and to prevent the School Board from sitting as an unbiased tribunal as the complaint sought. However, by that time, plaintiff had achieved one of his objectives: time to prepare for the termination hearing. However, shortly thereafter, the case was removed to federal court, and the litigation continued. In fact, as the district court noted, defendants did not even move for summary judgment until three months after Judge Mueller's decision. Also, the motion for summary judgment was not filed until after it became clear that a newly reconstituted School Board would be considering Bisciglia's termination. Furthermore, the record indicates that settlement discussions ensued, and that the district court granted Bisciglia several extensions for his response based upon these events. On this record, it is not at all clear that plaintiff was required to voluntarily dismiss his removed federal court action based upon the state court judge's denial of a temporary injunction. Moreover, we find that Bisciglia's failure to immediately abandon his claims does not show subjective bad faith, or that the action was frivolous, unreasonable, or without foundation such that an award of fees under Section 1988 is warranted.
 
 C. Grant of Summary Judgment
 
 33
 The court need not dwell long on Bisciglia's contention that summary judgment should not have been granted.[9] The complaint alleged claims for breach of contract, breach of the implied covenant of good faith, and denial of due process under Section 1983 based upon inadequate notice and a biased tribunal. (Appellant's Appendix at 1). Clearly, by February 1993, summary judgment was properly granted because all of the original claims became moot when the School Board dropped all charges against Bisciglia and extended his contract for another year.
 
 
 34
 D. Denial of Plaintiff's Motion for Leave to Amend
 
 
 35
 The district court also denied plaintiff's motion for leave to file an amended complaint. In his amended complaint, Bisciglia sought to state a claim under 42 U.S.C. Sec. 1981 based upon certain School Board members' alleged discriminatory bias against him. Although the court acknowledged that leave to amend "shall be freely granted when justice so requires," it denied the motion, stating:
 
 
 36
 Section 1981 only provides relief for discrimination based on one's race, and claims based on one's national origin or Italian heritage are not cognizable under the Statute. See generally Anooya v. Hilton Hotels Corp., 733 F.2d 48, 49-50 (7th Cir.1984); Petrone v. City of Reading, 541 F.Supp. 735, 738-39 (E.D.Penn.1982). The Court "may deny leave to amend where the proposed amendment fails to allege facts which would support a valid theory of liability...." Verhein v. South Bend Lathe, Inc., 598 F.2d 1061, 1063 (7th Cir.1979).
 
 
 37
 Bisciglia, 149 F.R.D. at 591.
 
 
 38
 As Bisciglia correctly notes, in rendering its decision, the district court relied on case law predating the Supreme Court's decision in Saint Francis College v. Alkhazraji, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). In Saint Francis College, which involved a claim by a man born in Iraq, the Court held that a claim of discrimination based on ancestry or ethnic characteristics was actionable under Section 1981. Specifically, after reviewing the legislative history and the definitions of "race" applicable when Section 1981 passed, the Court determined that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." Id. at 612, 107 S.Ct. at 2027. In fact, the Court made clear:
 
 
 39
 The Court of Appeals was thus quite right in holding that Sec. 1981, "at a minimum," reaches discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens." It is clear from our holding, however, that a distinctive physiognomy is not essential to qualify for Sec. 1981 protection.[10]
 
 
 40
 Id.
 
 
 41
 Here, Bisciglia was not given leave to amend his complaint based upon the district court's erroneous belief that Section 1981 only applied to discrimination based upon "race." However, the proper inquiry here is "not whether [Italians] are considered to be a separate race by today's standards, but whether, at the time [Section 1981] was adopted, [Italians] constituted a group of people that Congress intended to protect." Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617, 107 S.Ct. 2019, 2022, 95 L.Ed.2d 594 (1987) (holding that Jews are not foreclosed from stating a claim under Section 1982 based upon the Court's reasoning in Saint Francis College ). In fact, the Supreme Court's historical research suggests that "Italians" may have been considered an identifiable "race." See Saint Francis College, 481 U.S. at 611, 107 S.Ct. at 2027; see also Benigni v. City of Hemet, 879 F.2d 473, 477 (9th Cir.1988) (elements of discrimination claim present where plaintiff was singled out based on his Italian ancestry); DeSalle v. Key Bank of Southern Maine, 685 F.Supp. 282, 284 (D.Me.1988) ("Section 1981 was designed to protect identifiable classes of persons, such as Italo-Americans.") Therefore, on this record, it is not clear that Bisciglia can state no set of facts upon which relief can be granted under Section 1981.[11] The motion for leave to file this amended claim should have been granted.
 
 E. Attorney's Fees
 
 42
 Lastly, Bisciglia claims that he is entitled to attorney's fees because he prevailed in obtaining the initial TRO from Judge Bastianelli, and as a result, obtained sufficient time to prepare for the hearing. Plaintiff also claims that his lawsuit was the impetus for the School Board dropping all charges against him, and extending his contract for another year. The court rejects this claim.
 
 
 43
 In Libby v. Illinois High School Association, 921 F.2d 96 (7th Cir.1990), we rejected an argument quite similar to the one advanced here. In Libby we addressed the question "whether a party who obtains a temporary restraining order just prior to a case becoming moot can nonetheless be a 'prevailing party' for purposes of an award of attorney's fees." Id. at 97. In that case, Tanya Libby, a female high school student brought a civil rights suit for injunctive and declaratory relief challenging rules prohibiting her from playing soccer on the boys' team although her high school did not have a girls' soccer team. Id. Several TRO's were entered in Libby's favor while the court considered her motion for a preliminary injunction. The last TRO was entered to allow Libby to participate in a post-season tournament scheduled to begin the next day. The next day the plaintiff's team lost in the opening round of the tournament, and the motion for a preliminary injunction became moot. By the following spring, Libby's high school fielded two girls' soccer teams. Libby played on one of those teams, and her complaint became moot. Id. at 98.
 
 
 44
 In affirming the district court's denial of fees in that case, we held:
 
 
 45
 A plaintiff who obtains provisional relief, such as a TRO, becomes a prevailing party only if that relief was a determination on the merits or acted as a catalyst to obtain concessions from the appellee ... but not where the grant of provisional relief merely preserves the status quo.
 
 
 46
 Id. at 99. Although we noted that the high school's decision to have two girls' soccer teams may have been "as a result of the interest generated by [the] lawsuit," we emphasized that the district court order was in no way a determination on the constitutional claims raised in the complaint. Id.
 
 
 47
 This case presents a much more compelling case for the denial of fees. Here, plaintiff was granted a TRO in the state court several days before his scheduled termination hearing. The court's order was short, and contained no discussion of the merits of the case. This order merely served to maintain the status quo until a hearing could be held on the merits of plaintiff's claim for injunctive relief. When the merits were considered, plaintiff was accorded no relief. Moreover, this court has affirmed the district court's grant of summary judgment in defendants' favor. Bisciglia is not a prevailing party within the meaning of Section 1988.
 
 IV. Conclusion
 
 48
 For the foregoing reasons, the district court's judgment is AFFIRMED IN PART AND REVERSED IN PART. This case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Ann Claire Williams, District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation
 
 
 [1]
 During this time, Bisciglia was also allegedly informed that four members of the School Board were biased and had already decided to vote for his removal--regardless of what might occur at the hearing
 
 
 [2]
 Since defendants were presumably put on notice at the same time as Bisciglia, the district court only awarded defendants their costs and attorney's fees from the date they filed their motion for summary judgment on December 2, 1992
 
 
 [3]
 Rule 11 was amended, on April 22, 1993, effective December 1, 1993. Significantly, the 1993 amendment provides:
 By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--(1) it is not being presented for any improper purpose ... (2), the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....
 
 
 [4]
 According to the Advisory Committee Notes, the 1993 amendments to Rule 11 impose a continuing duty to update on the signer because "a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court...."
 
 
 [5]
 However, as noted supra, under the 1993 amendment, it is clear that sanctions under Rule 11 could be imposed "if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court ... it would be viewed as 'presenting'--and hence certifying to the district court under Rule 11--those allegations." Fed.R.Civ.P. 11 advisory committee's note
 
 
 [6]
 We find that the amended complaint is not frivolous for the reasons explained in part III, D of this opinion
 
 
 [7]
 Before the district court, defendants argued that fees were properly awarded under either section 1988 or Rule 11
 
 
 [8]
 As noted above, the district court did not make an express Christiansburg finding because it had imposed sanctions under Rule 11
 
 
 [9]
 The court also notes the inherent inconsistency in plaintiff suggesting here that summary judgment was improperly granted while also emphasizing that he never filed anything in the district court "opposing" dismissal of his original claims
 
 
 [10]
 Since the Court expressly held that a distinctive "physiognomy" (i.e., apparent characteristics, outward features) is not required, we reject defendants' contention that "the discrimination must be based, at least in part, on physical characteristics associated with the ethnic group." (Appellees' Supp. Brief at 3)
 
 
 [11]
 Defendants' argument that leave was properly denied because Bisciglia failed to file a brief in support as required by the Local Rules is rejected. This argument was not raised before the district court, and will not be considered here